**Gene O. HOBSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 171–82.**

Court of Criminal Appeals of Texas, En Banc.

Jan. 26, 1983.

Allen C. Isbell, Houston, on appeal only, for appellant.

Jack Salyer, Dist. Atty., Bay City, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

OPINION ON APPELLANT'S PETITION
FOR DISCRETIONARY REVIEW

CLINTON, Judge.

The Corpus Christi Court of Appeals affirmed this conviction for murder in an

opinion reported in *Hobson v. State,* 627 S.W.2d 532 (Tex.App.—Corpus Christi, 1982).

We granted the petition for review in order to decide whether the Court of Appeals correctly determined that the trial court did not err in refusing to authorize the jury to find if appellant's conduct constituted voluntary manslaughter rather than murder. Appellant requested such a substantially correct charge in writing and objected to the failure to give one. Thus, the only legal question is whether there was evidence sufficient to raise the issue and to warrant submission on an instruction on voluntary manslaughter. A recitation of pertinent facts is made since appellant contends the statement of the court is inadequate.

During the late evening hours of January 9, 1978, William Bryant Phillips, III, left an apartment located in the 4400 block of Boone Road; as he walked to his car he saw two men right next to the curb just across the street. One was lying on his back moaning and the other was kneeling over the supine one. Phillips asked if they needed any help, and the kneeling man turned his head around and nodded negatively. Finding the situation "odd," Phillips returned to his friend's second story apartment and they went to a bedroom window to watch. The two men were no longer curbside, but in a parking lot nearby a car, the trunk of which was open. Because the area was not well lighted, all Phillips could see was some person moving behind the trunk "like he was wrestling with a set of golf clubs or tool chest—something pretty heavy;" the man "evidently got it in the trunk and closed the trunk, then walked back to his car and took off his jacket." The car soon drove away with the lights off, went a short distance, stopped and backed up with its lights turned on; the driver got out, walked back to the area, seemed to pick up an object and looked at something on the ground; he then returned to the car, drove down Boone Road and away from the location.

Phillips went to the spot where the two men had been, and "it looked like he had just field dressed a deer"—"there was blood ... probably half the size of this table in front of me." From the pool of blood near the curb it appeared that something had been dragged from there back to the trunk of the car where "it was also as if something stood and dripped" blood on the ground. Phillips called the police and told them what he had seen, describing the fallen man as dressed in blue jeans and some type of tennis shoes or jogging shoes and the car as a late model, maybe a two door LTD, with a dark vinyl roof over a light colored body, perhaps yellow or blue.

Police investigation would later discover papers and an employee of a rental car agency on the Southwest Freeway indicating that a person identifying himself as appellant and using his Master Charge card obtained a car on a one day rental basis and drove it some 180 miles;[1] when he returned it appellant[2] represented that he had damaged the trunk mat by spilling motorcycle engine grease and had been unable to find a replacement for it.

Some two months later the decomposed body of Dennis James Keena, a seventeen year old male, was found and removed from the Colorado River near a residence off of F.M. 961 north of Highway 59 between Wharton and Glen Flora in Wharton County. His death had been caused by multiple stab wounds in his back.

Only the confession of appellant informed the jury of events that led to the death of Keena. Admitted by the trial court after a full *Jackson v. Denno* hearing—as to the taking of which see the opinion of the court below, *Hobson v. State,* supra, at 535–536—the statement recounts appellant's version of his activity on the day of the offense, *viz:*

1. Color photographs were admitted in evidence as State's Exhibits for the purpose of showing the type and color of the automobile: It is a two door Mercury Cougar with a yellow body and a roof half covered with a brown material.

2. The rental agency person had made an in-court identification of appellant as the renter.

"On January 9th, 1978, Lisa [appellant's daughter] contacted me wanting me to get Dennis Keena out of jail. She said she would beg for money if I didn't loan her the money. I loaned her the money.

We went to the Houston Police Department and got him out of jail. We took him to a church. He walked away from the church and we went to eat.

We then moved Lisa's clothes and stereo back to her mother's. Then I took Lisa to work.

I called Budget Rent-A-Car on the Southwest Freeway and made arrangements to rent a car. I got the car in the afternoon. I paid for the car with my personal Master Charge card.

Then I drove to Dennis Keena's apartment to observe him. I watched him and he came out and went to another apartment. He then left and walked to Bellaire. This was about 6:30 or 7:00 p.m. He disappeared.

I went home and ate and returned to the area around 9:00 p.m. I saw him in front of Slick Willie's. I parked and watched him. He stood around and then walked to the Do-Nut Shop. I saw a policeman go into the Do-Nut Shop. The police left and then I saw Dennis Keena in the Do-Nut Shop. I continued to observe him.

I thought he knew who I was.

I saw him walking toward his house. I left and drove to the parking area beside the tennis courts. I backed into the parking space. He walked down the sidewalk directly toward me. He stopped and asked me 'What do you want?' I had gotten out of the car. He was standing on the curb and I walked toward him. He asked why I was following him. I told him to get out of Lisa's life and everything would be fine. I generally threatened to have him put in jail.

He said, 'I will tell Lisa what you are doing.' I told him, 'If you want to keep from getting cut up, back off.' I took a buck knife from my pocket and opened it and showed him. He was standing on the curb and I was standing in the gutter.

["He grabbed me around the neck with both hands. We fell to the ground 'I cut him in the stomach.' [sic] He kept his hands around my throat. For me to live,"][3]

I cut him in the throat. I pushed him with great force. A guy came up and asked, do I need any help? I told him no. He left and I drug him around and put him in the trunk of the 1977 Cougar XR-7. It was dark brown with a yellow bottom. I had blood all over me.

I went home and put the clothes I was wearing in the washing machine."[4]

Among other matters the trial court charged the jury on the law of murder, authorizing a conviction if jurors believed

3. The part bracketed by us was introduced by appellant under the rule of optional completeness.

4. Appellant's confession continues to relate how he disposed of the body of Kenna, *viz:*

"I left my house and went to Boone Road to a construction site. I got wire and concrete blocks. I thought about throwing him in the Brazos River at Highway 59. I changed my mind and drove to Glen Flora Bridge over the Colorado River. I stopped on the bridge. I drug him out of the car. I tied the blocks to him with the wire. I had a hard time getting the body and blocks over the guard rail. I threw him over the south side of the bridge. I drove away.

There was blood on the bridge. I drove to a [sic] car wash in Wharton to inspect the car. I took the trunk mat out and wiped the inside out. I then washed the outside of the car. I rolled the trunk mat up and put it back in the trunk.

I then left Wharton and returned to Houston. I stopped on the bridge at the Brazos River on Highway 59. I threw the boots I was wearing and the knife into the river. I left the bridge and stopped again to throw the trunk mat out. I threw it on the side of the road. Then I came home.

The next day I returned the rented car. I told the girl at Budget Rent-A-Car I moved a motorcycle engine in the trunk and got oil on it. She checked the price of the mat and charged me.

I went to work after I returned the car.

This statement is true and correct to the best of my knowledge.

Signed 'Gene O. Hobson.' "

from the evidence beyond a reasonable doubt that appellant did intentionally or knowingly cause the death of Keena by stabbing and cutting him with a knife. As well, the court instructed the jury on prior relationship pursuant to V.T.C.A. Penal Code, § 19.06[5] and on selfdefense, qualifying the latter with an instruction on provoking the difficulty.[6] However, as appellant complains, the charge did not include an option for the jury to find appellant committed voluntary manslaughter.

■ Decisions of the Court make clear the following propositions of law generally applicable in determining whether a charge should include instructions on such matters. Collected in, e.g., *Moore v. State*, 574 S.W.2d 122, 124 (Tex.Cr.App.1978), they are:

"The credibility of evidence and whether it is controverted or conflicts with other evidence in the case may not be considered in determining whether a defensive charge or an instruction on a lesser included offense should be given. When evidence *from any source* raises a defensive issue or raises an issue that a lesser included offense may have been committed . . . [7] the issue must be submitted to the jury. It is then the jury's duty, under the proper instructions, to determine whether the evidence is credible and supports the defense or the lesser included offense. [citations omitted]"

■ Voluntary manslaughter, denounced and defined by V.T.C.A. Penal Code, § 19.04(a), (b) and (c), is "the same as murder 'except that he caused the death under the immediate influence of sudden passion arising from an adequate cause,' " *Braudrick v. State*, 572 S.W.2d 709, 710 (Tex.Cr.App.1978).[8] The exception "is not an element of voluntary manslaughter but is instead in the nature of a defense to murder that reduces that offense to voluntary manslaughter," *ibid.* and *Humphries v. State*, 615 S.W.2d 737, 738 (Tex.Cr.App. 1981). The Court takes guidance from

---

5. "You are instructed that you may consider all relevant facts and circumstances surrounding the killing, if any, and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense, if any."

6. That instruction concluded:
   "Now, if you believe from the evidence of this cause beyond a reasonable doubt that the defendant brought about the necessity of using force against Dennis James Kenna by provoking Dennis James Kenna's use of or attempted use of force against him so that he, the defendant, might then use deadly force against Dennis James Kenna, if he did, you will not hold in favor of the defendant on the issue of self-defense."

7. We have omitted language about requesting a charge since error may be just as well preserved by a proper objection to failure to submit the issue. See *Roberts v. State*, 590 S.W.2d 498, 501, 502 (Tex.Cr.App.1979) and *Boles v. State*, 598 S.W.2d 274, 278 (Tex.Cr.App.1980). (All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

8. The statute provides in pertinent part:
   "(a) A person commits an offense if he causes the death of an individual under circumstances that would constitute murder under Section 19.02 of this code, except that he caused the death under the immediate influence of sudden passion arising from an adequate cause.
   (b) 'Sudden passion' means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.
   (c) 'Adequate cause' means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection."
   In *McGee v. State*, 473 S.W.2d 11 (Tex.Cr. App.1971) Judge Odom drew from Webster's Dictionary the following definitions of terms arguably germane here, *viz:*
   "Anger is the general term for emotional reaction of extreme displeasure and suggests neither a definite degree of intensity, nor an outward manifestation; rage implies loss of self-control from violence of emotion; resentment is a feeling of indignant displeasure at something regarded as a wrong, insult, or injury . . ."
   *Id.,* at 15, n. 1 (Odom, J., dissenting). For further nuances see "Anger," Standard Handbook of Synonyms, Antonyms and Prepositions, Funk & Wagnalls, New York (1947) at 49.

cases decided under the former manslaughter statutes, *McCartney v. State,* 542 S.W.2d 156, 160 (Tex.Cr.App.1976), and the governing principle is: "The charge on voluntary manslaughter is mandatory only when there is evidence that the defendant acted under the immediate influence of sudden passion arising from adequate cause." *Cerda v. State,* 557 S.W.2d 954, 958 (Tex.Cr.App.1977); *McCartney v. State,* supra, at 160.[9] Thus, the question is whether there was some evidence which raised the issue that appellant was acting under such "immediate influence." We find there was not.

The first element germane here is "sudden passion," which must be "directly caused by and arising out of provocation" by the deceased "at the time of the offense" —passion "solely the result of former provocation" will not qualify. Section 19.04(b).[10] Appellant argues that earlier events of the morning preceding the confrontation in the evening had created an "emotional crisis" for this father, so concerned about his daughter's relationship with a young man just released from jail. However, if that be the passion influencing appellant, it cannot be reasonably said to be sudden—arising at the time of the offense. Such emotion may serve to explain his order that Keena "get out of Lisa's life" so that "everything would be fine," as well as his threat to have Keena put back in jail, but it hardly justifies his subsequent conduct.

So, appellant points to the retort attributed to Keena: "I will tell Lisa what you are doing." This, appellant suggests, was the provocation arising at the time of the offense that gave rise to sudden passion which influenced appellant to warn Keena: "if you want to keep from getting cut up, back off,"[11] and to produce a buck knife, open it and "show" it to Keena. Viewing the alleged provocation objectively— through the eyes of an ordinary man—we do not find there is enough evidence of adequate cause, sufficient to render the mind of a person of ordinary temper incapable of cool reflection, to warrant a charge on voluntary manslaughter. *Tebo v. State,* 133 Tex.Cr.R. 61, 106 S.W.2d 712 (1937); *McGee v. State,* 473 S.W.2d 11, 14 (Tex.Cr.App.1971); *McCartney v. State,* 542 S.W.2d 156, 160–161 (Tex.Cr.App.1976).

Therefore, though our own analysis of the situation differs somewhat from that of the Court of Appeals, we find the trial court did not err in refusing to charge on voluntary manslaughter.[12]

The judgment of the Court of Appeals is affirmed.

TEAGUE, J., not participating.

9. "[I]t was well established under former Article 1257c that it was not error to fail to instruct on the issue of murder without malice unless there was *some* testimony raising the issue. [Citations omitted]"

10. "Sudden passion" is generally said to be manifested by "an excited and agitated mind at the time of the killing caused by an act of the deceased." *Elsmore v. State,* 132 Tex.Cr.R. 261, 104 S.W.2d 493, 495 (1937); *Ray v. State,* 515 S.W.2d 664, 667 (Tex.Cr.App.1974); *Roberts v. State,* 590 S.W.2d 498, 501 (Tex.Cr.App.1979).

11. That ambiguous admonition is not ever clarified. Not shown to have been in response to any aggressive movement by Keena, it must have been no more than a reiteration to "get out of Lisa's life"—to "back off" from her, or risk being in harm's way. In any event, appellant was threatening Keena who, according to his confession, had not yet engaged in any untoward conduct.

12. However, since appellant had already opened and displayed his buck knife to Keena, we agree with the Court of Appeals that, as a matter of law, the act of Keena in grabbing appellant *around his neck with both hands,* followed by their falling to the ground, was not an adequate cause to give rise to an immediate influence of sudden passion. See *Luck v. State,* 588 S.W.2d 371, 374 (Tex.Cr.App.1979); cf. *Armentrout v. State,* 515 S.W.2d 297, 300 (Tex.Cr.App.1974).