David Orosco HILL, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–82–00351–CR.

Court of Appeals of Texas, El Paso.

Oct. 31, 1984.

Rehearing Denied Nov. 28, 1984.

Warren Heagy, Odessa, for appellant.

Wm. Michael Holmes, Dist. Atty., Odessa, for appellee.

STEPHEN F. PRESLAR, C.J., and WARD and OSBORN, JJ.

## OPINION

WARD, Justice.

This is an appeal from a jury conviction for murder. The court assessed punishment at ten years imprisonment. We affirm.

In Grounds of Error Nos. Two, Three and Four, Appellant complains of the manner in which the court charged the jury on the offenses of murder and voluntary manslaughter. When the evidence raises an issue of killing under the influence of sudden passion arising from an adequate cause, the charge must be designed in such a fashion that the burden is placed upon the State to prove the elements common to both offenses beyond a reasonable doubt and to negate beyond a reasonable doubt the existence of sudden passion to achieve a verdict of murder. *Cobarrubio v. State,* 675 S.W.2d 749 (Tex.Crim.App.1983), rehearing denied, September 26, 1984. Appellant complains that this requirement was not adequately reflected in the abstract portion of the charge defining the offenses. We disagree. The abstract portion of the charge first defined murder in the traditional statutory fashion. It then recited the law further providing that intentionally or knowingly causing death under the influence of sudden passion gives rise to the offense of voluntary manslaughter. Close on the heels of these two short definitions, the court correctly defined "sudden passion" and "adequate cause." On page two of the charge, applying the law to the facts, the court accurately presaged the Court of Criminal Appeals result in *Cobarrubio* by requiring the negative of sudden passion in the murder paragraph and requiring its positive finding in the voluntary manslaughter paragraph. Reading the charge as a whole, we find that the burden described in *Cobarrubio* was adequately expressed to the jury to guide their deliberations. Grounds of Error Nos. Two, Three and Four are overruled.

In Grounds of Error Nos. One and Five, Appellant challenges the sufficiency of the State's evidence to disprove the existence of "sudden passion." *Jefcoat v. State,* 644 S.W.2d 719, 725 (Tex.Crim.App.1982). We note at the outset that there is serious doubt as to the sufficiency of the evidence to raise the issue of voluntary manslaughter in this case. The nature of the alleged provocation in this case arguably does not as a matter law amount to adequate cause. See: *Hobson v. State,* 644 S.W.2d 473, 478 (Tex.Crim.App.1983). In addition, Appellant presented very thin evidence of the subjective aspect of this issue by his recital. His memory of events shortly before the shooting was, to say the least, "fuzzy." From the moment of the allegedly provoking words by the victim, it is a complete blank. See: *Hanks v. State,* 542 S.W.2d 413, 415 (Tex.Crim.App.1976).

In any event, we find it unnecessary to evaluate the propriety of giving the lesser charge, since the evidence was adequate to refute the sudden passion "defense" beyond a reasonable doubt. Appellant personally testified to his relationship with the victim. Appellant was married and had five children. He met the victim, a barmaid, approximately eighteen months before the shooting. According to his version, he developed no love for her but did offer to help her obtain citizenship papers. She allegedly began calling his home, causing distress to his ailing wife. He purportedly asked her three times not to call again. The victim had married Ensibio Guerra in June, 1980. No calls were placed during the two and one-half to three months prior to the October 2, 1980, shooting.

On the night of October 2, Appellant visited Los Gallitos Cafe where the victim was working. He consumed four or five beers. Before midnight, Appellant's friend, Armando Oropeza, entered the cafe and sat with Appellant. The victim occasionally conversed with them. She went outside and leaned against a car. Appellant followed her out and talked to her. She allegedly threatened to continue the calls and disrupt Appellant's relationship with his wife. She reentered, spoke to Oropeza and then went into the bathroom. Appellant reentered and looked in the kitchen; he reemerged with a pistol in his hand. Oropeza and another female patron tried to leave. Appellant stopped them by pointing the pistol at them. He then pointed the pistol at Oropeza's feet and let the hammer fall. The gun did not discharge. He then told the victim to open the bathroom door and that he was going to kill her. She refused. He knocked the door down and shot her once. She fell to the floor, and he shot her approximately five more times.

The rebuttal of sudden passion by the State may be found in the testimony of the victim's husband and daughter, as well as that of Armando Oropeza. The former two testified that the victim wanted nothing to do with the Appellant after discovering his marital status. It was he who continued to push for a relationship with the victim. They described her as being fearful of Appellant during the several months prior to the shooting.

Oropeza testified that throughout his time with Appellant at the cafe, Appellant appeared normal and not upset. He described everything as content. When the Appellant followed the victim outside, he still appeared to be in a good frame of mind. The talk outside, while not overheard, did not appear agitated. When the victim reentered, she stopped at Oropeza's table and said, "I wish this man would leave," before entering the bathroom. When Appellant reentered, he still did not appear angry or upset. Even when the gun was drawn, Oropeza felt that Appellant was joking because his tone of voice and manner were normal. After kicking the door down and firing the first shot, Appellant raised his voice for the first time, saying, "I'm not going to stand and see that any son-of-a-bitch, man or woman, will ridicule me." He then fired the additional shots. Police Officer Linda Primera testified that two hours later Appellant was controlled, coherent and normally conversant at the police station.

■ The testimony of the victim's husband and daughter, the lapse of time since the last alleged telephone call by the victim and the observations of Oropeza provided a sufficient basis for the jury to conclude beyond a reasonable doubt that "sudden passion" did not lead to the killing. The jury could legitimately conclude that Appellant's entire depiction of the relationship was false, that he killed her as a spurned lover and that her rejection did not amount to adequate cause. The jury could also have properly concluded that even if his version were true, her alleged words were objectively insufficient to amount to adequate cause for killing. Finally, based upon Appellant's demeanor up to and at the time of the shooting, the jury could have ·concluded that regardless of any words by the victim, Appellant was not

under such passion that he was incapable of cool reflection. The evidence was sufficient to support a jury determination of any of the above three conclusions, any one of which would properly result in a verdict of murder and not voluntary manslaughter. Grounds of Error Nos. One and Five are overruled.

The judgment is affirmed.