Harold Douglas GRANTHAM,
Appellant,

v.

The STATE of Texas, State.

No. 2–86–093–CR.

Court of Appeals of Texas,
Fort Worth.

June 2, 1988.

James M. Stanley, Fort Worth, for appellant.

Chris Marshall, Asst. Dist. Atty., Fort Worth, for appellee.

Before BURDOCK, JOE SPURLOCK, II and HILL, JJ.

## OPINION

HILL, Justice.

Harold Douglas Grantham appeals his conviction by a jury of the offense of attempted capital murder. The jury assessed his punishment at twenty years confinement in the Texas Department of Corrections. Grantham presents fifteen points of error.

We affirm.

In points of error numbers one, two, and three, Grantham contends that the trial court erred by instructing the jurors on parole eligibility because the charge given was inconsistent and confusing; because the charge given is not authorized by law since article 37.07(4)(a) only authorizes the charge in connection with offenses listed in sections 3f(a)(1) or 3f(a)(2) of article 42.12 of the Texas Code of Criminal Procedure, and article 42.12 has no section 3f(a)(1) or 3f(a)(2); and because the giving of the

charge violates the doctrine of the separation of power between the executive and judicial branch, as required by TEX. CONST. art. I, sec. 1.

Grantham made only a general objection to the trial court's instruction, which failed to preserve error. *Quinones v. State*, 592 S.W.2d 933, 943–44 (Tex.Crim.App.), *cert. denied*, 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980); *Mosely v. State*, 643 S.W.2d 212, 216 (Tex.App.—Fort Worth 1982, no pet.). In order to justify a reversal when no error has been preserved, an appellant must show that the error was fundamental and he suffered egregious harm. *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1984).

We have previously held that the charge is not unconstitutionally vague. *Spelling v. State*, 719 S.W.2d 404, 409 (Tex.App.—Fort Worth 1986, pet. granted); *Shaw v. State*, 729 S.W.2d 134, 135 (Tex.App.—Fort Worth 1987, pet granted).

We have also previously considered the question raised due to there being no section 3f(a)(1) or 3f(a)(2) in article 42.12 of the Texas Code of Criminal Procedure. We held that the legislature clearly intended the reference to be to section 3g(a)(1) and 3g(a)(2) and that we might disregard such a clearly clerical error. *Shaw v. State*, 729 S.W.2d at 136.

The Texas Court of Criminal Appeals has held that this jury instruction is unconstitutional because it is an unconstitutional violation of the separation of powers among the three branches of government. *Rose v. State*, 752 S.W.2d 529, (Tex.Crim.App.1987) (reh'g pending). This case is still pending on motion for rehearing. In reliance on the reasoning set forth in *Rose*, we find that the instruction was improperly given because it constituted an unconstitutional violation of the separation of powers among the three branches of government.

We now consider the question of whether Grantham suffered egregious harm due to the giving of the instruction. The range of punishment for attempted

capital murder is confinement in the Texas Department of Corrections for life or for any term of not more than 99 years or less than 5 years and a fine not to exceed $10,000. Grantham received twenty years. Neither counsel referred to this portion of the court's charge in final argument. Nothing in the record reflects that the jury discussed this portion of the charge in reaching its verdict. Considering the entire record, we do not find that Grantham suffered egregious harm as a result of the giving of the instruction. We overrule points of error numbers one, two, and three.

In point of error number four, Grantham urges that the trial court erred by improperly commenting to the jury that the indictment is evidence.

■ The trial court, in response to an objection by defense counsel to the act of the prosecutor in waving the indictment in front of the jury, stated, "Counsel, the indictment is in the Court's file. It's evidence." Grantham made no objection to the comment. The trial court's error in telling the jury that the indictment was evidence was waived due to the failure to object. See Sharpe v. State, 648 S.W.2d 705, 706 (Tex.Crim.App.1983). We overrule point of error number four.

Grantham asserts in point of error number five that the trial court erred by refusing to give him a requested charge on the lesser included offense of attempted voluntary manslaughter and sudden passion.

■ In determining whether a charge on a lesser included offense is required, a two-step analysis is to be used. First, the lesser included offense must be included within the proof necessary to establish the offense charged. Second, there must be some evidence in the record that if the defendant is guilty, he is not guilty of the alleged offense but is guilty only of the lesser included offense. Salinas v. State, 644 S.W.2d 744, 745 (Tex.Crim.App.1983). The fact that the evidence is controverted or conflicts with other evidence in the case is not to be considered in determining whether an instruction on a lesser included

offense should have to be given. See Hobson v. State, 644 S.W.2d 473, 477 (Tex. Crim.App.1983).

■ When evidence from any source, including the defendant's own testimony, raises the issue of a lesser included offense and there is testimony that, if guilty at all, the defendant is only guilty of the lesser included offense, then the charge on the lesser included offense must be submitted to the jury, assuming the charge is properly requested or its omission properly objected to. Hunter v. State, 647 S.W.2d 657, 658 (Tex.Crim.App.1983). It is then the jury's duty, under the proper instruction, to determine whether the evidence is credible and supports the lesser included offense. See Hobson, 644 S.W.2d at 477.

■ While attempting to execute a search warrant, Officer C.W. Goodwin of the Fort Worth Police Department was shot in the arm and received injury to his back due to a bullet which struck his bulletproof vest. He was accompanied by numerous other officers in the execution of the warrant. It was nighttime, Grantham's front porch was well lit. Grantham testified that his wife woke him on the evening in question to tell him that someone was breaking down their door. She called the police, at the same time handing him a .38 special which she kept under her mattress. He said he saw a hand stuck in the door and then pull back out after he yelled, "What are you doing? You better get out of here. The police are on their way." He said that gunfire started at that time, before he fired a shot, and that he was scared to death, afraid that someone was coming in to rob them because his wife carried home large sums of money from the bar she managed. He said that in a crazed rage of terror he ran down to the door, stuck the gun out and fired one shot to scare them off.

Officer Goodwin testified that he knocked on Grantham's door and yelled "Police." Officer Goodwin said that when no one responded to the knock he tried to kick the door and then hit it with his shoulder, shattering some of the wood panels in

the door. He further related that when he reached his hand through the door that he saw Grantham, he established eye contact with him, and told him that they were police officers and had a search warrant. Officer Goodwin said that when he said that to Grantham, that Grantham, who had his right hand behind his right leg, raised his right hand, which contained a gun.

Police testimony would indicate that Grantham fired at Officer Goodwin from inside the house, then stuck the pistol through the hole in the door and fired two more shots in Officer Goodwin's direction.

Under these facts, if Grantham is guilty at all, he is guilty of attempted capital murder. The only alternative theory before the jury was the one presented by Grantham to the effect that he shot out of fear and terror because he thought the people at whom he was shooting were breaking into his house to commit robbery.

If Grantham's theory were correct, then he would have been justified in the use of deadly force and would not have been guilty of any crime. *See* TEX. PENAL CODE ANN. secs. 8.02, 9.31, 9.32, 9.41, and 9.42 (Vernon Supp.1988). We therefore find that Grantham was not entitled to an instruction on attempted voluntary manslaughter and sudden passion. We overrule point of error number five.

In point of error number six, Grantham complains of the trial court's denial of his motion to quash the indictment against him on the ground that the indictment did not specify whether he was being charged with murder under article 19.02(a)(1), (a)(2), or (a)(3) of the Texas Penal Code. The pertinent portion of the indictment read as follows:

> HAROLD DOUGLAS GRANTHAM hereinafter called Defendant, in the County of Tarrant and State aforesaid, on or about the 27th day of November 1984, did THEN AND THERE INTENTIONALLY, WITH THE SPECIFIC INTENT TO COMMIT THE OFFENSE OF MURDER OF FORT WORTH POLICE OFFICER, C.W. GOODWIN, DO AN ACT, TO–WIT: SHOOT THE SAID C.W. GOODWIN WITH A FIREARM, AND SAID ACT AMOUNTED TO MORE THAN MERE PREPARATION THAT TENDED BUT FAILED TO EFFECT THE COMMISSION OF SAID MURDER AND THE SAID OFFICER C.W. GOODWIN WAS THEN AND THERE A PEACE OFFICER WHO WAS ACTING IN THE LAWFUL DISCHARGE OF AN OFFICIAL DUTY AND THE SAID HAROLD DOUGLAS GRANTHAM THEN AND THERE KNEW THE SAID C.W. GOODWIN WAS A PEACE OFFICER.

A similar indictment has been held to be sufficient as against the challenge Grantham now presents. *Hall v. State*, 640 S.W. 2d 307, 309 (Tex.Crim.App.1982). We overrule point of error number six.

Grantham urges in point of error number seven that the trial court erred by denying him the opportunity to examine the file of the internal affairs division of the Fort Worth Police Department as it related to this case. The file as subpoenaed by Grantham was placed under seal and forwarded with the trial record to this court for our review. The record was subsequently lost. We abated this appeal so that there might be a substitution of the lost record in accordance with rule 50 of the Rules of Appellate Procedure. We are now in receipt of the substituted record.

In argument under this point of error Grantham asserts both that the file may have contained exculpatory material and that he did not have access to the statements of certain witnesses for purposes of cross-examination.

Discovery in criminal proceedings is defined and controlled by article 39.14 of the Texas Code of Criminal Procedure, which provides that upon written notice showing good cause the trial court may order the production of:

> [A]ny designated documents, papers, written statement of the defendant, (except written statements of witnesses and except the work product of counsel in the case and their investigators and their notes or report), books, accounts, letters, photographs, objects or tangible things not privileged, which constitute or contain evidence material to any matter in-

volved in the action and which are in the possession, custody or control of the State or any of its agencies.

TEX.CODE CRIM.PROC.ANN. art. 39.14 (Vernon 1979).

■ This statute makes it clear that what is discoverable is within the discretion of the trial court. *Quinones v. State,* 592 S.W.2d 933, 940 (Tex.Crim.App.), *cert. denied,* 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980). The trial court is required to permit discovery only if the evidence sought is material to the defense of the accused. *Id.* at 941. In determining materiality, the undisclosed evidence must be evaluated in the context of the entire record and there is error only if the undisclosed evidence creates a reasonable doubt that did not otherwise exist. *Id.* The mere possibility that an item of undisclosed information might have helped the defense or affected the outcome of the trial is insufficient to establish materiality. *Id.* This test is the same test utilized by the United States Supreme Court in determining whether there has been a violation of a defendant's due process rights to disclosure. *United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976).

■ The records sought by Grantham were sealed and forwarded to this court. We have examined the sealed records forwarded to us and find that they contain no evidence which would create a reasonable doubt that did not otherwise exist.

■ Upon timely request, a defendant is entitled to a prior statement or report of a trial witness to use for purposes of cross-examination and impeachment. *Jackson v. State,* 506 S.W.2d 620, 621 (Tex. Crim.App.1974). However, any error in denying such a request to inspect the written report of a witness may be harmless, dependent upon whether the examination of the statement by this court demonstrates that the defendant has suffered harm by reason of the trial court's error. *Id.* at 622. Having examined the sealed material and having compared it to the testimony received in court, we find nothing in the report which conflicts with testimony given

in court, nor have we found anything missing in the reports which were included in the testimony. We therefore find that if Grantham was denied any witness statement after a timely request, any error was harmless beyond a reasonable doubt. We overrule point of error number seven.

In point of error number eight, Grantham urges that the trial court erred by admitting into evidence items seized in violation of his rights under the fourth amendment to the United States Constitution. He complains of the sufficiency of the affidavit supporting the search warrant and also complains of the method the warrant was served, including the fact that the officer had the warrant in his car and not on his person, and the fact that the officer kicked in the door to the residence. Although the point is multifarious, we will consider the points raised.

■ In considering the sufficiency of the affidavit supporting the search, we must in light of the totality of the circumstances made known to the magistrate, determine if the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In the supporting affidavit, two Fort Worth Police officers testified their belief that Charlotte Grantham possessed methamphetamine in the residence at 2325 Fairway Drive. Their conclusion was based on information from a previously reliable confidential informant. According to the affidavit, the informant had previously been inside the residence and observed persons using methamphetamine which they had just purchased from Charlotte Grantham. The informant further told the officers that the informant had purchased methamphetamine from Charlotte Grantham at the residence within twenty-four hours before the affidavit and that Mrs. Grantham still had additional methamphetamine at the residence in her possession. We find that in light of the totality of the circumstances made known to the magistrate, he had a substantial basis for concluding that a search would uncover evidence of wrongdoing.

Grantham complains that the warrant was in the officer's car instead of on his person, and that the officers kicked in the door when they served the warrant and that the return on the warrant was not properly acknowledged. He cites no authorities in support of any of these contentions. We have nevertheless considered each contention and find them all to be without merit. We overrule point of error number eight.

■ Grantham urges in points of error numbers nine and ten that the trial court erred in allowing the state to prove the use to which drug users put mirrors, knives, scales, and rubber bands such as those found in the search of his residence. He asserts that such proof was not tied to the specific items found and that such evidence was prejudicial.

The State is entitled to prove the circumstances surrounding an arrest except where the evidence is inherently prejudicial and has no relevance to any issue in the case. *Kennard v. State,* 649 S.W.2d 752, 762 (Tex.App.—Fort Worth 1983, pet. ref'd). The primary issue in the trial was Grantham's state of mind, including his motive for shooting the officer. Evidence that he possessed paraphernalia commonly used in connection with controlled substances is relevant to that issue. We find that the relevance outweighs the prejudicial value. We also note that counsel did not object on the same basis that he now urges until much of the evidence was already before the jury. We find, therefore, that any error in the admission of the evidence was harmless beyond a reasonable doubt. We overrule points of error numbers nine and ten.

In point of error number eleven, Grantham urges that the trial court erred in permitting testimony as to the street price of methamphetamine. Counsel's objection was to the effect that the evidence was not relevant or material, a general objection which is insufficient to preserve error. *See Goodrich v. State,* 632 S.W.2d 349 (Tex. Crim.App.1982). We overrule point of error number eleven.

■ Grantham urges in point of error number twelve that the trial court erred in admitting a photograph showing the view from inside his house. His objection is that the picture was posed after the offense with an officer other than the injured party standing outside the door on the porch. He argues that the testifying witness could not verify where the injured officer was at the time of the shooting and could therefore not testify that the photograph was a true and accurate representation of the scene at the time of the shooting. The photograph was offered to show the view from inside the house, not as a true and accurate representation of the view at the time of the incident. The general issue of visibility of persons on the front porch from inside the house was at issue. The witness testified that the photograph was a fair and accurate depiction of the scene at the time he took the photograph. We overrule point of error number twelve.

In point of error number thirteen, Grantham urges that the trial court erred in not granting his motion for a mistrial based upon evidence that the State failed to disclose evidence of an exculpatory nature.

Grantham refers to testimony of Officer C.A. Lewis, who is assigned to the crime scene search unit of the Fort Worth Police Department. Lewis testified that he saw a bullet in the storm door of Grantham's residence, that it would have been difficult to remove the bullet, that he did not mention the bullet in any of his reports, and that in his opinion the bullet in the door came from Grantham's weapon. He further testified that unless Grantham's weapon had been altered, it appeared to have only been fired one time. Lewis testified that he communicated this information to the prosecutor one week prior to his testimony. The district attorney had maintained an open file policy in this case, allowing defense counsel complete access to its file. Defense counsel, on several occasions, had asked the prosecutor if he knew of any exculpatory evidence inconsistent with Grantham's guilt, since the prosecutor was assigned the case sometime around July, 1985. The district attorney said that the officer explained to him that it was his

opinion that the shot was fired from inside the house, passed through Officer Goodwin's arm, and struck the door.

Grantham argues that Lewis's observations and opinions are exculpatory. The record would indicate that Lewis's observation and opinion was that a bullet, probably fired from Grantham's weapon, probably struck Officer Goodwin and then became imbedded in the storm door. This evidence is not exculpatory or mitigating. We overrule point of error number thirteen.

■ Grantham asserts in point of error number fourteen that the trial court failed to give an instruction limiting the jury's consideration of extraneous offenses to motive and intent. He does not state what extraneous offense to which he has reference, but we assume it is the evidence of the controlled substance and paraphernalia found at his residence. It is not necessary to give a limiting instruction on an extraneous offense which is part of the case on trial or blended or closely interwoven with the case on trial when such offense is admitted to show the context in which the criminal act occurred. *Luck v. State*, 588 S.W.2d 371 (Tex.Crim.App.1979).

Grantham relies on the cases of *Johnson v. State*, 509 S.W.2d 639 (Tex.Crim.App. 1974) and *Sparks v. State*, 366 S.W.2d 591 (Tex.Crim.App.1963). *Johnson* involved two robberies committed against the same victims. The second robbery was admitted on the issue of the defendant's identity, not to establish the context of the offense charged. In *Sparks*, a statutory rape case, evidence of prior sexual acts upon the prosecutrix was admitted. The court held that the defendant should have had an instruction limiting the jury's consideration of the evidence for the purpose of aiding them in determining whether the defendant had committed the particular act relied upon by the State. The court held that the trial court had erred in giving the jury an instruction to the effect that they could consider the evidence only for impeachment purposes. *Sparks* does not involve evidence admitted for the purpose of establishing the context of the act alleged. We overrule point of error number fourteen.

■ In point of error number fifteen, Grantham asserts that the evidence is insufficient to support his conviction. The evidence established that as Officer Goodwin was seeking to enter the Grantham residence he was shot. There was testimony that he and the other officers had identified themselves as officers to Grantham. Goodwin testified that after he had told Grantham that he was an officer who had a warrant, Grantham raised his right hand, which had a gun in it. He testified that a bullet which hit him in the arm came from inside of the house.

Officer R.L. Cloud testified that he saw, after Officer Goodwin was first hit, the hand of a white male holding a gun come from inside the house. He said he observed two muzzle blasts and heard two shots coming from the gun, which was pointed at Officer Goodwin. Officer John Hubbard testified to the same facts. Officer L.C. Henderson also testified to the same facts. He testified that the first shot came from inside the house.

Several other officers testified that shots fired at Officer Goodwin came from inside the house, with several officers testifying that the hand of a white male extended from inside the house and fired two shots at Officer Goodwin.

Grantham testified that he thought someone was trying to break in, and that he never heard anyone identify himself as a police officer. He acknowledged firing one shot out the door. There was a delay of several minutes before the officers were able to obtain entrance to the residence. When the officers found Grantham's gun, it showed that at least one shot had been fired. No other white male was in the residence besides Grantham.

Grantham urges that the evidence did not show that he was the one who fired shots at Officer Goodwin and that the evidence was insufficient to show his intention to kill Officer Goodwin.

There is ample evidence in the record to show that Grantham fired the pistol at the officers. Officer Goodwin saw Grantham aiming a gun at him just before the first shot was fired. All the officers testified

that several shots, including the first one fired, came from inside the house. Further, they testified that they saw a white male's hand fire two of the shots. Grantham's testimony established that he was the only one inside the house firing a pistol. He was the only male in the house.

Grantham also urges that the evidence is insufficient to show his intent. It is unclear whether he is referring to an intent to kill or an intent to kill a peace officer.

The officers all testified of efforts which they made to identify themselves. Officer Goodwin testified that he made eye contact with Grantham and told him that he was a police officer who had come to serve a warrant. He said that the appellant replied by raising his pistol up toward him. There was sufficient evidence to establish Grantham's knowledge that Officer Goodwin was a peace officer.

■■■ The pistol which Grantham fired at Officer Goodwin was a deadly weapon. The intent to kill can be inferred from the use of a deadly weapon unless in the manner of its use it is reasonably apparent that death or serious bodily injury could not result. *Flanagan v. State,* 675 S.W.2d 734, 744 (Tex.Crim.App.1984). We hold that the evidence is sufficient to support the conviction. We overrule point of error number fifteen.

The judgment is affirmed.