SUAREZ W/O H.E. 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-93-545-CR




CLEMENTE SUAREZ,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE


 




FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 51ST JUDICIAL DISTRICT 



NO.CR92-07130-A, HONORABLE JOHN E. SUTTON, JUDGE PRESIDING



 




 Appellant, Clemente Suarez, was convicted of murder in a jury trial. Penal Code,
63d Leg., R.S. ch. 399, sec. 1, § 19.02, 1973 Tex. Gen. Laws 883, 913, amended by Act of May
28, 1973, 63d Leg., R.S., ch. 424, art. 2, § 1, 1973 Tex. Gen. Laws 1122, 1123 (Tex. Penal
Code Ann. § 19.02, since amended). He was sentenced to fifty-five years' imprisonment and
assessed a fine of $10,000. As his first and second points of error, appellant asserts that the trial
court erred by refusing to submit a charge on voluntary manslaughter which would have required
the state to disprove the existence of sudden passion arising from an adequate cause. See Penal
Code, 63d Leg., R.S., ch. 399, sec. 1, § 19.03, 1973 Tex. Gen. Laws 883, 913, amended by Act
of May 28, 1973, 63d Leg., R.S., ch. 426, art. 2, § 1, 1973 Tex. Gen. Laws 1122, 1124 (Tex.
Penal Code Ann. § 19.04, since amended) (hereafter "former section 19.04"). Appellant asserts
in his final point of error that the trial court erred by refusing to charge the jury on criminally
negligent homicide as a lesser included offense of murder. We will affirm the conviction.


BACKGROUND


 Appellant and his wife, Guadalupe Suarez, reconciled in 1992 after a two-month
separation. (1) To mark the event, they set out to annul appellant's previous marriage so that they
could be married in the Catholic Church. (2) During the separation, Guadalupe Suarez discovered
that appellant had developed a relationship with another woman. After the reconciliation,
appellant asked his wife never to refer to his affair again.

 To retrieve some of the papers necessary for the annulment, the Suarezes drove
from Lubbock to the Rio Grande Valley. Gloria Rivera, Guadalupe's cousin, accompanied them
on the trip. Appellant was angry that Guadalupe had asked Gloria to accompany them. He also
testified that he was extremely angry because his wife repeatedly mentioned his affair during the
trip. Appellant accused Gloria of "egging his wife on." Gloria testified, however, that Guadalupe
and appellant did not argue on the trip.

 Tensions escalated on the return trip to Lubbock. While driving through San
Angelo, Guadalupe asked Gloria if they were going in the right direction. Appellant became
enraged that Guadalupe had asked Gloria for directions rather than him. Appellant grabbed the
steering wheel, pulled the car to the side of the road, and exchanged places with his wife. 
Appellant then pulled into a parking area behind a store, pushed Guadalupe out of the car, and
jumped out. After striking his wife, appellant retrieved a double action .38 caliber revolver (3) from
the trunk of the car. According to appellant, he was about to walk away when his wife began to
taunt him and threatened to have someone "take care of him." Appellant pulled out the gun and
aimed it at Guadalupe. As Guadalupe backed towards the car, the gun discharged. Appellant
testified that Guadalupe struck the gun, causing it to fire. (4) The bullet struck Guadalupe in the
mouth, severing her vertebral artery; she subsequently bled to death.

 Appellant admitted that he knew the gun was loaded and that he had pointed it at
his wife as a "form of authority" and "to get her attention." The Bexar County Medical Examiner
testified that the gun was fired approximately three feet from the decedent's face. The Medical
Examiner also found that residue on the decedent's left palm indicated that her hand had been one
to two feet away from the barrel when the gun was fired.

 After the first bullet struck Guadalupe, appellant claims he cocked the gun and
placed it against his own temple. (5) When Gloria begged appellant to drive Guadalupe to the
hospital to try to save her life, he discarded the gun. A U.S. border patrol agent and a San
Angelo police officer found a gun identified as the murder weapon nearby the next day; the
hammer was cocked. Appellant was charged with Guadalupe's murder.



DISCUSSION


 Appellant asserts as his first and second points of error that the trial court erred in
refusing to charge the jury on voluntary manslaughter as a lesser included offense of murder. We
use a two-step analysis in determining whether such a charge should have been given. First, the
lesser included offense must be included within the proof necessary to establish the offense
charged; second, there must be some evidence in the record that if the defendant is guilty, he is
guilty only of the lesser offense. Royster v. State, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981).

 Under the statutes applicable to this cause, voluntary manslaughter may be a lesser
included offense of murder. Havard v. State, 800 S.W.2d 195, 216 (Tex. Crim. App. 1989). 
A charge on voluntary manslaughter is mandatory if there is evidence that the defendant acted
under the immediate influence of sudden passion arising from adequate cause. (6) Hobson v. State,
644 S.W.2d 473, 478 (Tex. Crim. App. 1983). If the evidence raises the issue, the State must
disprove sudden passion from an adequate cause beyond a reasonable doubt, and the court must
so instruct the jury in the charge. Bradley v. State, 688 S.W.2d 847, 851 (Tex. Crim. App.
1985); Cobarrubio v. State, 675 S.W.2d 749, 751 (Tex. Crim. App. 1984). When the defendant
is not entitled to a jury instruction on voluntary manslaughter, the State is not required to disprove
the existence of sudden passion. Lincecum v. State, 736 S.W.2d 673, 682 (Tex. Crim. App.
1987).

 Although the jury is the final arbiter of whether a defendant acted under "the
immediate influence of sudden passion arising from adequate cause," the court first makes a
threshold determination that there is some evidence indicating the passion was "sudden" and the
cause was "adequate." See Hobson, 644 S.W.2d at 478. (7) Passion resulting solely from former
provocation will not qualify as "sudden passion" under § 19.04. Hobson, 644 S.W.2d at 478. 
Moreover, even if a defendant makes a sufficient showing that the passion was sudden, there must
still be adequate cause for the passion to warrant a voluntary manslaughter charge.

 Appellant testified that he was enraged by his wife's taunting and constant
mentioning of his affair, that he resented the presence of his wife's cousin, and that his wife's
asking her cousin for directions made him angry. Appellant presents no authority to support his
assertion that one or any combination of these actions by his wife or her cousin constitutes
adequate cause sufficient to provoke a person of ordinary temper to kill under the immediate
influence of sudden passion. Furthermore, it appears from the testimony that appellant provoked
the conflict when he seized control of the car from his wife, pushed her out of the vehicle, and
began slapping her. When a defendant is the aggressor or precipitator of a confrontation, a charge
on voluntary manslaughter is not required. Lincecum, 736 S.W.2d at 679. Because appellant has
failed to provide any evidence of adequate cause for the rage which led him to kill his wife, we
agree with the trial court that appellant was not entitled to a charge on voluntary manslaughter. 
We overrule appellant's first and second points of error.

 In his third point of error, appellant asserts that the trial court erred by refusing to
charge the jury on criminally negligent homicide as a lesser included offense of murder. The trial
court charged the jury on murder, the lesser included offense of involuntary manslaughter, and
also on accident. The trial court refused a charge on criminally negligent homicide, ruling that
the evidence did not raise the issue.

 The difference between criminally negligent homicide and involuntary manslaughter
is the culpable mental state required to establish each offense -- criminal negligence for the former
and recklessness for the latter. Lewis v. State, 529 S.W.2d 550, 553 (Tex. Crim. App. 1975). 
Criminal negligence describes the actor's failure to perceive the risk created, while recklessness
reflects the actor's conscious disregard of that risk. Id.

 In reviewing appellant's contention that the trial court erred in failing to give his
requested charge on criminally negligent homicide, we are governed by the rule that the issue
must be submitted to the jury if evidence from any source raises the possibility of a defense or the
possibility that only a lesser included offense may have been committed; credibility is not to be
considered. Thomas v. State, 699 S.W.2d 845, 849, 851 (Tex. Crim. App. 1985) (citing Ormsby
v. State, 600 S.W.2d 782 (Tex. Crim. App. 1980) and Moore v. State, 574 S.W.2d 122 (Tex.
Crim. App. 1978)). However, as the Thomas court noted:



Every case in which someone points a loaded gun at another does not require that
a charge on criminally negligent homicide be given. Nor does the allegation of
accidental discharge necessarily raise the issue. . . . Rather, every case must be
examined in light of its particular facts and circumstances to determine if the
defendant was unaware of the risk his conduct created.



699 S.W.2d at 850 (emphasis added). Thus, a charge on criminally negligent homicide is
required only if there is some evidence that a defendant was unaware of the risk he created.

 The Thomas court cited factors which may indicate a defendant's awareness of risk: 
knowing that a gun is loaded, familiarity with guns and their potential for harm, and pointing the
gun at another person. (8) Id. Appellant contends that all of these factors must be present in order
to establish that he realized the risk. He argues that his testimony that he was unfamiliar with
guns, despite having served twenty years in the navy, coupled with his testimony that he was
enraged and did not intend to discharge the gun, is sufficient to raise the inference that he was
unaware of the risk he created when he pointed the loaded gun at his wife. We disagree.

 Thomas eschewed a single or multi-factor litmus test for awareness and admonished
the trial court to review "all of the circumstances showing the defendant's mental state and
awareness of risk of harm or death." Id. at 851. In Thomas, the defendant shot and killed a cafe
owner in an argument after being barred from the restaurant for causing a disturbance. Thomas
testified that he was unsure whether his gun was loaded, that he pointed at the decedent but did
not intend to shoot him, and that the discharge was an accident. Id. at 849, 852. If the factors
the court cited were conjunctive as the appellant contends, Thomas would have been entitled to
an instruction on criminally negligent homicide because he was unsure whether the gun was
loaded. Instead, the court of criminal appeals held that because Thomas's conduct reflected an
awareness of the risk of injury or death, the trial court properly denied his requested charge on
criminally negligent homicide. Id. at 852.

 Additionally, the Thomas court cited with approval Salinas v. State, 644 S.W.2d
744 (Tex. Crim. App. 1983), which held that a defendant who exhibits a loaded, cocked pistol
is presumed to be aware of the risk of injury or death. See also Lewis v. State, 529 S.W.2d 550
(Tex. Crim. App. 1975) (cited with approval in Thomas and holding on similar facts that waving
a loaded pistol at another established a conscious disregard of the risk, not the "inattentive risk
creation" of criminal negligence). In the instant cause, appellant testified that (1) he pulled out
the gun to get his wife's attention; (2) he did so intending to scare her into doing what he asked;
(3) he knew the gun was loaded; (4) he must have cocked the gun after pulling it from its bag; and
(5) he pointed the gun within two inches of his wife's face. Suarez had recently purchased the
gun for protection and was thus aware of its destructive power. Taken together with the rest of
his conduct, appellant's bald assertion that he was unfamiliar with guns is insufficient to raise an
inference that he was unaware of the risk.

 Thomas instructs us to review all circumstances that reflect a defendant's mental
state and his awareness of the risk of harm or death his conduct creates. 699 S.W.2d at 851. In
light of these circumstances, the court could properly conclude that appellant realized the risk of
harm or death he created when he pointed the loaded revolver point-blank at his wife and was at
least reckless in disregarding that risk. We are satisfied that, under the analytical framework of
Thomas, appellant failed to adduce any evidence that could support a reasonable inference that he
was unaware of the risk. The trial court, therefore, properly denied appellant's request for a
charge on criminally negligent homicide. We overrule appellant's third point of error.

 


CONCLUSION


 Because we conclude that the trial court correctly refused to submit charges on
voluntary manslaughter and criminally negligent homicide to the jury, we affirm the conviction.



 Bea Ann Smith, Justice

Before Justices Powers, Aboussie, and B. A. Smith

Affirmed

Filed: October 19, 1994

Do Not Publish 

1.   This account of events is based on appellant's testimony. Gloria Rivera,
Guadalupe's cousin and an eyewitness to the shooting, offered testimony that differs in
certain respects, which we will note when relevant.
2.   Appellant and Guadalupe had been married in a civil ceremony on December 14,
1991.
3.   A double action revolver can be fired either by cocking the hammer and pulling the
trigger or by simply pulling the trigger.
4.   Gloria testified that Guadalupe never reached for the gun. 
5.   Gloria testified that appellant pointed the gun at her after shooting Guadalupe. 
Appellant was charged with aggravated assault against Gloria, but this charge was
dismissed.
6.   Former Section 19.04. Voluntary Manslaughter


(a) A person commits an offense if he causes the death of an individual under
circumstances that would constitute murder under Section 19.02 of this
code, except that he caused the death under the immediate influence of
sudden passion arising from an adequate cause.


(b) "Sudden passion" means passion directly caused by and arising out of
provocation by the individual killed or another acting with the person killed
which passion arises at the time of the offense and is not solely the result of
former provocation.


(c) "Adequate cause" means cause that would commonly produce a degree of
anger, rage, resentment, or terror in a person of ordinary temper, sufficient
to render the mind incapable of cool reflection.
7.   In Hobson, the court of criminal appeals held that there was no evidence of sudden
provocation giving rise to adequate cause that required a voluntary manslaughter charge. 
Hobson stalked his daughter's boyfriend, who had recently been released from prison, to
intimidate and prevent the man from seeing his daughter. After a brief altercation, Hobson
stabbed the man to death. The court held that the boyfriend's threat, "I will tell Lisa what you
are doing," was not an adequate cause for sudden passion leading to the stabbing. Hobson,
644 S.W.2d at 478.
8.   Evidence that a defendant did not anticipate an accidental discharge caused by
another person bumping him may also be considered in determining awareness of the
risk. Thomas, 699 S.W.2d at 850.