Arnold Hurtado MENDIVIL, Appellant,

v.

The STATE of Texas, Appellee.

No. 08-90-00271-CR.

Court of Appeals of Texas,
El Paso.

June 26, 1991.

Rehearing Overruled July 31, 1991.

John W. Cliff, Jr., Smith & Cliff, P.C., Odessa, for appellant.

Gary Garrison, Dist. Atty., Odessa, for appellee.

Before OSBORN, C.J., and WOODARD and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

This is an appeal from a conviction for murder. The jury assessed punishment, enhanced by one prior felony conviction, at imprisonment for ninety-nine years and a fine of $10,000.00. We reverse and remand.

The sole point of error asserts that the trial judge erred in refusing to submit a jury issue on the lesser included offense of voluntary manslaughter. The victim was Appellant's ex-wife. They had been separated for approximately two months at the time of the alleged offense. On the night of January 17, 1990, Appellant was babysitting his young daughters at a house at 1304 Zeneta in Odessa, where his former wife, Angelica Segovia, the deceased, their children and Donna Orosco had been residing. The deceased and Orosco were partying at a local bar. They returned between 1:30 and 2 a.m. Appellant spent the night and engaged in sexual intimacy with the deceased. The next afternoon, Appellant offered to take her out to eat. They entered his vehicle and left for the restaurant, Appellant driving. En route, the deceased drew a knife and held it toward Appellant, saying:

[Y]ou better not try anything ... you better not try to kill me or anything.... In his statement, Appellant explained that she frequently exhibited a fear of injury at his hands and had previously threatened him with the same and other knives. Police reports confirmed a prior incident in which the deceased had stabbed Appellant in the upper arm. Appellant stated he had no intention of harming her. He grabbed the knife to take it away from her. She twisted and "yanked" it away, inflicting a wound to two fingers on Appellant's right hand. Medical records and police observations confirmed that the flexor tendons on both fingers were severed.

Feeling on the verge of passing out due to the injury to his fingers, Appellant be-

gan to struggle with the deceased, disarming her. His depiction of the ensuing events consisted of several intermittent lucid moments, interrupted by periods of "blanking out". He remembered having her in a headlock, then holding her by the neck with accompanying bleeding. Ultimately, they were on the ground outside the vehicle, bleeding profusely. He had sustained an additional cut to his chin. The deceased sustained fifty stab wounds—to the head, face, neck, chest, abdomen, back, arms, hands and thighs. Three head wounds were delivered with sufficient force to fracture the skull. One eye was ruptured, and one of the stab wounds to the back had punctured her lung.

In describing his state of mind at the time of the struggle, Appellant used the following terms:

[G]oing in shock 'cause my finger.

. . . . .

I went like insane.

. . . . .

I went berserk, I went [in]sane or something.

The State's position is that the Appellant's depiction of his mental state did not raise sudden passion as defined in Tex.Penal Code Ann. § 19.04(b) and (c) (Vernon 1989). The State relies primarily upon *Gonzales v. State,* 717 S.W.2d 355 (Tex. Crim.App.1986) and *Martinez v. State,* 664 S.W.2d 822 (Tex.App.—Austin 1984, no pet.). In those cases, the evidence merely depicted the defendants' physical behavior and the physical context in which it arose. There was no evidence of that degree of terror or anger which would raise a sudden passion issue. *Gonzales,* 717 S.W.2d at 357. The Court of Criminal Appeals has indicated that the court is not free to recognize the requisite heightened emotional state by implication. *Id.*

In the present case, the evidence goes beyond the mere portrayal of the physical aspects of the conflict between the Appellant and the deceased. The evidence reflected, and the State does not presently contest, the fact that the deceased had previously threatened and in fact stabbed

the Appellant with the same or a similar knife. Objectively speaking, the injury to Appellant's fingers was sufficient in severity to be reasonably recognized as an adequate cause of sudden passion—not as a matter of law but certainly as a factual issue ripe for jury determination. As in any complaint concerning failure to instruct, we do not address the weight or credibility of Appellant's version of how he was injured. That too was a matter for jury assessment.

The critical issue in this case is whether the Appellant's verbal description of his mental and emotional state amounted to some evidence of sudden passion. We conclude that it did. In keeping with *Gonzales*, we look for some affirmative evidence of the requisite mental state, but we do not expect or demand that it be couched in the same precise language of Section 19.04. In *Brunson v. State*, 764 S.W.2d 888, 895–896 (Tex.App.—Austin 1989, PDRR), the Court of Appeals resorted to common dictionary definition of "panic", the defendant's term, to find some evidence of sudden passion—an incapacity to engage in cool reflection due to anger, rage, resentment, terror or like emotion immediately and adequately caused by the behavior of the other party. That opinion expressly refers to a conflict with the assessment of a "panic" description in *Miller v. State*, 753 S.W.2d 473 (Tex.App.—Houston [1st Dist.] 1988, PDRR). The petition history of the two cases is of no assistance in resolving the conflict. We find ourselves aligned with the analysis and result in *Brunson.*

The Appellant in the present case used a variety of terms to describe his mental and emotional state in reaction to the injury to his fingers—shock, insane, berserk. The State has engaged in a sketchy resort to the dictionary and apparently overlooked some definitions which we have encountered. "Berserk" is defined as "marked by a display of violent erratic behavior indicative of *extreme excitement or agitation* and suggestive of *sudden mental unbalance.*" [Emphasis added]. Webster's Third New International Dictionary (Unabridged) 207 (1971). That definition alone suffices to raise the elements of sudden

passion under Section 19.04. Added weight arises from the term "shock", defined as "a *sudden* or *violent disturbance* in the *mental or emotional faculties* [,]" [emphasis added] ... "something that causes outrage, horror...." Webster's Third New International Dictionary (Unabridged) 2099 (1971). "Insane" is defined as "exhibiting unsoundness or disorder of mind ... to such a degree as to be unable to function safely and competently in ordinary human relations." Webster's Third New International Dictionary (Unabridged) 1167 (1971).

The words used by Appellant aptly depicted all aspects of sudden passion as defined by statute and related case authority. The lower court erred in refusing to submit the requested instruction on voluntary manslaughter. Point of Error No. One is sustained.

The judgment is hereby reversed and the cause remanded for new trial.