IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-319-CR





JESSE ALONZO, III,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE


 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT



NO. 105,957, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING



 





 After finding appellant guilty of the offense of murder, Tex. Penal Code Ann.
§ 19.02 (West 1989), the jury assessed punishment at life imprisonment. In a single point of
error, appellant asserts the trial court erred in refusing to instruct the jury on the lesser included
offense of voluntary manslaughter. We overrule appellant's point of error and affirm the
judgment of the trial court.

 Section 19.02 provides that a person commits murder if he "intentionally or
knowingly causes the death of an individual." However, the offense is voluntary manslaughter
if a person "causes the death of an individual under circumstances that would constitute murder
under section 19.02 of this code, except that he caused the death under the immediate influence
of sudden passion arising from an adequate cause." Tex. Penal Code Ann. § 19.04 (West 1989). 
Section 19.04 defines "sudden passion" and "adequate cause":


(b) "Sudden passion" means passion directly caused by and arising out of
provocation by the individual killed or another acting with the person killed
which passion arises at the time of the offense and is not solely the result of
former provocation.


(c) "Adequate cause" means cause that would commonly produce a degree of
anger, rage, resentment, or terror in a person of ordinary temper, sufficient
to render the mind incapable of cool reflection.



 Dr. Robert Bayardo, Chief Medical Examiner for Travis County, testified that
Munoz Garza "came to his death as a result of stab wounds to head, neck, chest, abdomen, back
and extremities, 83 in number, homicide." Dr. Bayardo related that the autopsy was performed
about four or five days following death, the body was badly decomposed, and that death was
probably caused by those wounds that penetrated the chest wall, the heart and the left lung rather
than the combined effects of all the wounds.

 Under direct examination by the prosecutor, the mother of one of appellant's
friends, Mary Ann Ortega, testified that appellant gave her the following account of what occurred
on the occasion in question:



Q. Tell me what Jesse Alonzo told you.


A. He had just told -- he told me that day that Michael Chapa and him were
walking and they confronted with this man and this man had pulled out a knife
-- I guess they were facing each other -- and they took out their knives.


 . . . .


Q. Did Jesse Alonzo tell you if he knew why the person pulled the knife?


A. For --


Q. All right. Go ahead.


A. He said that Michael was in the back, stabbed the man in the back and he
stabbed him in the front. . . . He said, you know what, . . . I think I gave
him maybe 15 good stabbings.


Q. All right. Go back to where he said he got in 15 good stabs. What did he say
after that?


A. Then he said that he was kind of shocked. He kind of snapped. He was like
he got scared because he said, but you know what, . . . Michael went psycho. 
He went crazy. He started stabbing the guy all over his face and everything.


Q. Is that -- did he tell you when in relation to his 15 good stabs that Michael
went psycho, as you say? Was it before or after?


A. After.



After being shown a written statement she had given police, Ortega testified that appellant told
her that they were going to rob the man and that the deceased did not pull a knife until after they
were going to rob him. On recall, later in the trial, Ortega related that appellant told her that after
they "attacked him the first couple of times, the guy . . . jumped into the water . . . and they
encountered him and finished him off there [after the deceased swam across the lake]."

 Joe Castillo, a friend of appellant's, saw appellant wash blood off a knife. 
Appellant told Castillo that "some dude" tried to jump them and cut Mike's eye, so they reacted
and stabbed him back. Castillo related that appellant "sounded shocked, like scared." Castillo
stated that appellant further told him that the deceased jumped into the water, but had come back
and "they had stabbed him some more." Appellant's written statement reflects that Mike and
appellant met the deceased when they were walking near Town Lake. After they shared a beer
with the deceased, the deceased got mad "because he wanted the last beer or something." When
the deceased started toward appellant, Mike kicked him in the side of the face. Mike "stabbed
him somewhere in the chest or stomach area." The deceased jumped into Town Lake and swam
to the south side of the lake. When appellant and Mike were walking across the bridge, appellant
told Mike, "[L]et's go back. The guy was already stabbed once." When they reached the other
side of the lake, the deceased crawled out of the lake and charged Mike with a broken bottle. 
Appellant's statement reflects that this was the first time that he stabbed the deceased. Mike
stabbed him several more times and appellant stabbed him "two times in the butt -- about two
more times in the back and then I stabbed him once in the chest."

 Following a call that a body had been found on the south bank of Town Lake,
Austin Police Officer Bruce Boardman proceeded to the site described in the call where he found
a badly decomposed body, later identified as Munoz Garza. Pursuant to information obtained
from Mary Ann Ortega, Boardman arrested appellant and Mike Chapa. Boardman testified that
his investigation revealed that the deceased swam the width of Town Lake despite having been
stabbed, and that appellant and Mike "tracked" him by crossing the bridge. Boardman stated that
it was a "great distance" for the deceased to swim.

 The court charged the jury on the law of self defense, the defense of a third person
and the law of parties, but refused to give an instruction on the lesser-included offense of
voluntary manslaughter. A two-step analysis is utilized in determining whether a charge on a
lesser-included offense is required. The lesser-included offense must be included within the proof
necessary to establish the offense charged. Additionally, there must be some evidence in the
record that if the defendant is guilty, he is guilty of only the lesser offense. See Mitchell v. State,
807 S.W.2d 740, 741 (Tex. Crim. App. 1991). If evidence from any source raises the issue of
a lesser-included offense, a charge on that offense must be included in the court's charge. Ojeda
v. State, 712 S.W.2d 743, 744 (Tex. Crim. App. 1986). The credibility of the evidence and
whether it conflicts with other evidence must not be considered in deciding whether the charge
on the lesser-included offense should be given. Lugo v. State, 667 S.W.2d 144, 147 (Tex. Crim.
App. 1984). Regardless of the strength or weakness of the evidence, if any evidence raises the
issue that defendant was guilty only of the lesser offense, then the charge must be given. 
Saunders v. State, 840 S.W.2d 390, 391 (Tex. Crim. App. 1992).

 It is undisputed that the issue of whether the court was required to grant the
instruction on voluntary manslaughter in the instant cause turns on whether there is evidence of
sudden passion arising from an adequate cause, and if there is evidence that, if guilty, the
defendant is guilty only of voluntary manslaughter. See Harvard v. State, 800 S.W.2d 195, 216
(Tex. Crim. App. 1989). Appellant relies solely on the testimony of Ortega in which she relates
the version of events told her by appellant. We may not consider the fact that the portion of
Ortega's testimony that appellant relies on to raise the issue conflicts with other portions of her
testimony since it is the jury's duty to determine the credibility of the evidence. Harvard v. State,
800 S.W.2d at 216.

 Appellant urges that his statement to Ortega that "he was kind of shocked" and "he
kind of snapped" was enough to raise the issue of sudden passion. In Brunson v. State, 746
S.W.2d 888 (Tex. App.--Austin 1989, pet. ref'd), the defendant's testimony that he "panicked"
when he saw the victim jerk his hand from behind his back, revealing a "metal flash," constituted
evidence that the defendant acted under sudden passion when he fatally shot the victim. In
Mendivil v. State, 812 S.W.2d 629, 631 (Tex. App.--El Paso 1991, no pet.), the defendant
described his mental and emotional state in reaction to knife wounds inflicted by his ex-wife as
"shock, insane, berserk" prior to his seizing the knife and fatally stabbing her. The Mendivil
court concluded that it was reversible error for the trial court to fail to instruct on the lesser-included offense of voluntary manslaughter. We find it unnecessary to determine whether the
instant cause is controlled by Brunson and Mendivil, since the emotional and mental state
described by appellant to Ortega came after he inflicted "15 good stabbings" on the deceased. 
Appellant urges that the jury may not have understood the testimony to reflect that he "snapped"
after he inflicted the wounds on the victim. Our review of Ortega's testimony dictates that
appellant's rendition of events to her is unequivocal in respect to his mental and emotional state
(of "kind of shocked" and "kind of snapped") following his action in stabbing the deceased fifteen
times.

 Appellant urges that in the event he "snapped" after inflicting fifteen stab wounds,
such mental and emotional state existed at the time he and Mike encountered the deceased on the
other side of Town Lake. Appellant reasons that the fact that the deceased swam across Town
Lake renders it unlikely that the fatal wounds were inflicted until the second altercation occurred. 
Appellant told Ortega that the deceased crawled out of the lake (after he swam across Town Lake)
and charged Mike with a broken bottle. The court charged the jury on the law of self defense and
the defense of a third party. The fact that the evidence raises the issue of self defense does not
entitle the defendant to a charge on voluntary manslaughter unless there is evidence that the
offense occurred under the influence of sudden passion arising from an adequate cause. Luck v.
State, 588 S.W.2d 371, 374-75 (Tex. Crim. App. 1979). Therefore, the evidence must show, at
the time of the offense, that the defendant was acting under the immediate influence of sudden
passion arising from an adequate cause. Gonzalez v. State, 717 S.W.2d 355, 357 (Tex. Crim.
App. 1986); Luck, 588 S.W.2d at 375.

 It is undisputed that the mental and emotional state on which appellant relies to
show sudden passion arising from an adequate cause occurred before he and Mike "tracked" the
deceased across the bridge. Officer Boardman described this as a "great distance" for the
deceased to swim. While crossing the bridge, appellant told Mike, "[L]et's go back. The guy
was already stabbed once." Appellant's expressed desire to turn back and the distance traveled
prior to the second encounter clearly negate that there was adequate cause to render appellant's
mind incapable of cool reflection immediately prior to the second encounter. We hold that the
trial court was not in error in refusing to grant appellant's requested instruction on voluntary
manslaughter. Appellant's point of error is overruled.

 The trial court is directed to reform its judgment to correctly reflect that the jury
made the affirmative finding of use of a deadly weapon. As reformed, the judgment is affirmed.



 

 Tom G. Davis, Justice

[Before Justices Jones, B. A. Smith, and Davis*]

Reformed, and as Reformed, Affirmed

Filed: March 10, 1993

[Do Not Publish]

















* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 74.003(b) (West 1988).