**Alex GONZALES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–95–00942–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 13, 1997.

Discretionary Review Refused
May 21, 1997.

George McCall Secrest, Jr., Houston, for Appellant.

John B. Holmes, Jr., Kimberly Aperauch Stelter, Houston, for Appellee.

Before HEDGES, COHEN and WILSON, JJ.

### OPINION

HEDGES, Justice.

The State has filed a motion to withdraw our original opinion. We grant the motion, withdraw our opinion issued on November 27, 1996, and substitute this opinion in its place.

Appellant, Alex Gonzales, was indicted and tried for murder in connection with the death of Ida Lee Delaney. A jury found him guilty of voluntary manslaughter and sentenced to seven years in prison. This Court reversed that conviction because appellant was not allowed to present admissible evidence vital to his defense and because the jury charge commented on the weight of the evidence. *Gonzales v. State,* 838 S.W.2d 848, 851 (Tex. App.—Houston [1st Dist.] 1992), *pet. dism'd, improvidently granted,* 864 S.W.2d 522 (Tex. Crim.App.1993). On remand, appellant was retried for voluntary manslaughter, found

guilty, and sentenced to two years in prison and assessed a $5,000 fine, both probated.

On appeal, appellant argues in two points of error that the evidence is legally insufficient to support the verdict. We affirm.

### Legal Sufficiency

The standard of review for legal sufficiency of the evidence is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, n. 12, 99 S.Ct. 2781, 2789 n. 12, 61 L.Ed.2d 560 (1979). That is, *the evidence must be examined in the light most favorable to the verdict* when deciding whether appellant could be guilty beyond a reasonable doubt. *Martinets v. State,* 884 S.W.2d 185, 189 (Tex.App.—Austin 1994, no pet.). A finding of legally insufficient evidence entitles appellant to an acquittal.

### Facts

On October 31, 1989, at approximately 5:00 a.m., Ida Lee Delaney was shot to death by appellant after an altercation during which Delaney shot and wounded appellant in the chest. The shooting resulted after appellant and two of his companions, all off-duty Houston police officers, pursued Delaney's pickup truck for over 12 miles on Houston's Southwest Freeway (Highway 59). The chase ended at the Newcastle exit, where Delaney wounded appellant with a revolver, and appellant shot her to death.

Victor Escamilla testified that the evening of October 30, 1989, he went to a night club/restaurant with his cousin, James Salazar. Salazar was a Houston Police officer and appellant's patrol partner. Escamilla and Salazar met appellant at the night club to celebrate Salazar's birthday. Alex Romero and Robert Gonzales, also police officers, joined them at the night club. The men ate fajitas and chicken and drank beer. Eventually, they decided to go to a gentlemen's club. Romero, Gonzales and appellant went in appellant's car, and Salazar and Escamilla went in Escamilla's truck. As Escamilla was following appellant's car to the gentlemen's

club, Escamilla and Salazar decided to return to the night club without telling the others. They last saw appellant at about 12:30 a.m.

Dennis Finn testified that while driving a concrete pump-truck he entered the College Street on-ramp of Interstate Highway 45 early the morning of October 31, 1989, headed north. Once on the highway, he noticed a pickup truck followed by a car that was flashing its lights. At first, Finn concluded that "they were trying to get somebody to pull over." He then determined that the car was attempting to stay up with the truck, but he did not think that it was trying to get ahead or pull alongside the truck.

Ysidro Villarreal testified that he was driving on Highway 59 early the morning of October 31, 1996. At the Hazard overpass, he caught up with Delaney's pickup, which was closely followed by appellant's car. He saw the car swerve towards the pickup and simultaneously flash its lights. Villarreal thought that the car was trying to run the pickup off the road or ram it from behind. Villerreal also testified that he could see a woman driving the pickup. He observed that the way she was driving indicated that she was "scared, petrified."

Pablo Garcia testified that he and fellow employee Jim Dunn worked for the Department of Transportation. On the morning of October 31, 1989, the two men were assigned to patrol the roadways looking for road damage on the outbound side of Highway 59 near the Newcastle exit. Shortly before 5:00 a.m., Garcia and Dunn stopped to check a pothole on the freeway's inside shoulder. As they were preparing to leave, Dunn called Garcia's attention to a car and a pickup that were approaching. The car was in the far right hand lane, and the pickup was in the second lane from the right. He thought that the pickup was trying to exit at Newcastle but was impeded by the car. It looked as if the vehicles were "going to have a wreck." The pickup left its lane and slowly drove across the freeway to the inside shoulder in front of Garcia and Dunn. The pickup stopped and backed up toward their truck. Then the driver of the pickup got out and started walking toward Garcia and Dunn's truck. She had nothing in her hands. As she

reached the rear of her pickup, appellant's car pulled up. The woman directed her attention towards it, turned around, and got back in her vehicle. Two men got out of the car and ran up to Garcia's truck, saying that they were police officers and that the pickup driver had been shooting at them earlier. They said that "they were cops and to call the police because the lady was shooting at them down the road." They seemed scared and excited. One of the men showed Garcia what he claimed to be police identification. Nevertheless, Garcia did not believe that they were police officers. Appellant ran up to the woman holding a gun in both hands. Garcia did not see appellant display any identification to the woman, although he heard appellant scream "police officer," and "freeze". He never heard appellant tell the woman she was under arrest.

The woman walked back to her pickup and tried to close the driver's door. She was prevented from doing so because appellant "was standing between the door and the cab." Garcia saw appellant hit the woman in the face with his fist. After being struck, the woman turned around and grabbed something. Appellant walked or stepped back, and the woman got out of the pickup with a gun. Garcia saw appellant fall down when the woman shot appellant in the chest as she left her vehicle. This shot was a single "soft shot." Garcia then heard "a whole bunch of shots" that were louder than the "soft shot." Appellant emptied his weapon, hitting Delaney four times.

Assistant district attorney Edward Porter testified that he arrived at the scene after the shooting. He videotaped the route Delaney and appellant had taken from the Park Place exit on the Gulf Freeway to the scene of the shooting. Porter said "it would have been very difficult to have seen" a person waiving a gun from a vehicle driving down the freeway. He conceded that a handgun discharge would have a muzzle flash and that he did not fire a handgun to test its effect on visibility. He testified that he recovered a Crown Royal liquor bag containing bullets from Delaney's vehicle. He also said the window of Delaney's pickup was three-quarters of the way down.

C.E. Anderson, a senior ballistics examiner with the Houston Police Department, testified that he arrived at the scene of the shooting at approximately 6:00 a.m. He recovered a .38 caliber revolver from Delaney's hand. The revolver had been fired at least once at the scene. Based on the number of fired cartridge casings at the scene, Anderson could tell that Delaney's revolver had been fired five times. He concluded that the revolver had recently been fired "because there was no dust or settled lint in the cylinders where the other fired cartridge cases were, and there was burned powder inside the cylinder, so it hadn't been too long."

Appellant did not testify at his second trial. Part of his testimony from the first trial was read to the jury. He testified that "at the time I was approaching the truck I was excited, my emotions were real high, I was scared, afraid." When asked, "Why did you shoot her?," appellant responded, "I thought I was going to die, I was in fear of my life, and she was going to shoot me again." He also testified that he had drunk 11 to 13 drinks between 10:00 p.m. and 2:45 a.m. the night of the shooting.

Valente Villeundas testified that when he saw appellant in the hospital after the shooting, he observed teeth marks, apparently from a bite, on appellant's left hand. Dr. Tommy J. Brown, the assistant medical examiner who performed the autopsy on Delaney, testified that there was no indication that her face had been struck before her death.

### Sudden Passion

In point of error one, appellant argues that the evidence is legally insufficient to support the conviction because the State failed to prove beyond a reasonable doubt that appellant "caused the death of the complainant under circumstances 'that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.'" In point of error two, appellant contends that the evidence is legally

insufficient to support a conviction of voluntary manslaughter because the State failed to prove beyond a reasonable doubt that "[appellant's] act of causing the death of the complainant arose out of provocation that could lawfully give rise to a charge on voluntary manslaughter."

■ One commits voluntary manslaughter if he causes the death of an individual under circumstances that would constitute murder, except that he acts under the immediate influence of sudden passion arising from adequate cause. *Gonzales*, 838 S.W.2d at 854; TEX.PENAL CODE ANN. § 19.04 (Vernon 1989).[1] "Sudden passion" is an excited and agitated state of mind at the time of the killing caused by direct provocation by the victim. TEX.PENAL CODE ANN. § 19.04. "Adequate cause" means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection. *Id.*

### Discussion

■ We perceive appellant's argument to be that because he shot Ida Lee Delaney after she first shot him, he acted not out of anger, rage, resentment, or terror, but out of self-defense, as a matter of law. The State argues that there is sufficient evidence to show terror, pointing to the following facts: appellant was intoxicated; he had been shot at, bitten, and most importantly, shot in the chest; he testified that he was "excited," "scared," "afraid," and experiencing "high emotions;" Garcia noticed that appellant's friends were "shook up" and "scared" just before Ida Lee Delaney and appellant shot each other; the officer's behavior was so agitated that Garcia doubted that they were policemen.

Typically, voluntary manslaughter is sought as a lesser included offense by a defendant. *See Bradley v. State*, 688 S.W.2d 847, 849–51 (Tex.Crim.App.1985). It is rare that the State would prosecute a defendant for voluntary manslaughter because "sudden passion" is akin to a defense. *See Daniel v.*

1. Act of May 23, 1973, 63rd Leg., ch. 399, § 1, 1973 Tex.Gen.Laws 883, 913, amended by Act of

May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex.Gen.Laws 3586, 3614.

State, 668 S.W.2d 390, 398 (Tex.Crim.App. 1984) (Miller, J., concurring). Normally, the State charges the defendant with murder, and the defense argues that because there is evidence of "sudden passion" and "adequate cause," a jury charge on voluntary manslaughter is appropriate. In this case, appellant was acquitted of murder in his first trial and could be retried only for voluntary manslaughter. Accordingly, the State had the burden of proving what is generally sought to be established by the defense: that appellant killed Ida Lee Delaney under what normally would be murder except that sudden passion (terror) arising from an adequate cause (being shot by Ida Lee Delaney) existed. *See Schoelman v. State,* 644 S.W.2d 727, 733 (Tex.Crim.App.1983).

When an accused kills during a heated argument, he is generally entitled to an instruction on voluntary manslaughter. *Havard v. State,* 800 S.W.2d 195, 216–17 (Tex. Crim.App.1989). Where the evidence showed that the victim provoked the defendant by coming toward her and saying that he was going to "get her," her fear and self-preservation instinct were enough to raise a question of "sudden passion." *Medlock v. State,* 591 S.W.2d 485, 487 (Tex.Crim.App. 1979). In *Mendivil v. State,* 812 S.W.2d 629, 630 (Tex.App.—El Paso 1991, no pet.), the ex-wife/victim had previously threatened the defendant and cut his fingers immediately before the defendant killed her. He testified that as a result, he was in a state of "shock" and "went berserk." *Id.* This evidence was enough to raise sudden passion. *Id.* at 631.

All the cases we have identified regarding sudden passion as an element of voluntary manslaughter involve the issue of whether a defendant tried for murder is entitled to a jury instruction on voluntary manslaughter. While these cases are not controlling, they are instructive in our inquiry whether the evidence is legally sufficient to support a conviction of voluntary manslaughter. Viewing the evidence in the light most favorable to the verdict, we hold that the evidence is legally sufficient to establish that appellant acted under sudden passion arising from adequate cause.

Appellant correctly argues that if we find that appellant provoked the confrontation, we cannot find that he acted with sudden passion arising from adequate cause. *See Nance v. State,* 807 S.W.2d 855, 861 (Tex.App.—Corpus Christi 1991, pet. ref'd); *Villegas v. State,* 791 S.W.2d 226, 239 (Tex. App.—Corpus Christi 1990, pet. ref'd). There is ample evidence in the record that Ida Lee Delaney provoked the confrontation.

We overrule points of error one and two.

We affirm the judgment.