TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-97-00565-CR







Linda Northcutt King, Appellant



v.



The State of Texas, Appellee








FROM THE DISTRICT COURT OF CALDWELL COUNTY, 22ND JUDICIAL DISTRICT


NO. 96-170, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING








 After finding appellant guilty of the offense of murder, Tex. Penal Code Ann.
§ 19.02 (West 1994), the jury assessed punishment at confinement for forty-nine years and a fine
of $8,000. Appellant asserts four points of error, contending that the trial court erred by: (1)
denying appellant's motion for new trial; (2) excluding evidence relative to appellant's mental state
prior to the alleged offense; (3) failing to give appellant's requested charge at the punishment
phase on whether appellant caused the deceased's death while under the immediate influence of
sudden passion arising from adequate cause; and (4) finding the evidence was sufficient to support
the conviction. We will overrule appellant's points of error and affirm the judgment of the trial
court.

 We believe it is a better practice to consider the sufficiency of the evidence to
support the conviction at the outset even though appellant designates it as his fourth point of error. 
In reviewing the legal sufficiency of the evidence, we must determine whether, viewing the
evidence in the light most favorable to the prosecution, any rational trier of fact could have found
the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S.
307, 319 (1979). Under the Jackson standard, the reviewing court is not to position itself as a
thirteenth juror in assessing the evidence, nor is it our place to second guess the determination
made by the trier of fact. See Collins v. State, 800 S.W.2d 267, 269 (Tex. App.--Houston [14th
Dist.] 1990, no pet.). The trier of fact (jury in this cause) is in a better place than an appellate
court to weigh, accept, or reject all or any portion of any witness's testimony. It is the duty of
this Court to determine if the explicit and implicit findings by the trier of fact are rational under
legal standards to support the conviction. See Adelman v. State, 828 S.W.2d 418, 422 (Tex.
Crim. App. 1992).

 The evidence favorable to the jury's verdict shows that during the early morning
hours of June 25, 1996, Israel Garcia of the Lockhart Police Department was on patrol when he
was dispatched to a residence where police had been unable to get any telephone response. After
he knocked several time at the door of the residence, appellant, pale and shaking, opened the door. 
Appellant had lacerations on both wrists and collapsed shortly after opening the door. When she
was asked if she had cut her wrists, appellant indicated an affirmative response. After calling
E.M.S., Garcia was able to get a directional gesture toward the end of the hall in response to
questions about whether anyone else was in the house. Garcia proceeded to a bedroom where he
found the deceased dead in bed. Appellant and the deceased were the only persons in the house.

 Dr. Robert Bayardo, Chief Medical Examiner for Travis County, conducted an
autopsy that showed six injuries to the deceased's head. Dr. Bayardo opined that the injuries had
been inflicted by a blunt instrument that resulted in the skull being "caved in and broken up." The
time of death based on the decomposition of the body was placed at three or four days prior to Dr.
Bayardo's examination on June 26, 1996.

 Officers and paramedics observed blood on the sheets of the bed where the body
was found covered with a sheet. Also, high velocity blood droplets were observed on the
headboard of the bed and on the wall of the room. Forensic serologist Gustavo De Leon
determined by DNA testing that blood stains on appellant's T-shirt had genetic markers consistent
with a known sample of the deceased's blood, and not consistent with a known sample of
appellant's blood.

 The deceased's son, Robert Stuenkel of Carrolton, testified that in June 1995, his
father asked him to come to Lockhart to discuss planning a will. When he attempted to discuss 
the disposition of his father's property, money his father had inherited and the house his father
owned, appellant became "very aggressive--she had a common-law status--she was entitled to the
same kind of things that a wife would be entitled to as part of the community property." Stuenkel,
independent executor of his father's estate, identified pleadings filed by appellant on July 22,
1996, in which she claimed an interest in the deceased's estate that included, in addition to the
aforementioned property, life insurance proceeds.


 Officer Gerald Clough testified that he questioned appellant after she was released
from the hospital. In response to his question about how the deceased's death occurred, appellant
responded, "He just wouldn't hush." Clough understood this to mean what appellant had earlier
told him about the victim "bringing back things that other people had told him of her or said about
her." Appellant had a prior conviction for forgery.

 Appellant urges that there was no evidence at trial, either circumstantial or direct,
that it was appellant's conscious desire or objective to cause the deceased's death. Intent may be
inferred from the circumstances of the conduct. See Perez v. State, 960 S.W.2d 84, 86 (Tex.
App.--Austin 1997, no pet.). Contrary, to appellant's argument, the cumulative weight of the
circumstantial evidence amply supports a rational trier of facts finding that appellant knowingly
or intentionally caused the death of the deceased. Appellant's fourth point of error is overruled.

 In her first point of error, appellant contends that the trial court erred in denying
her first amended motion for new trial. At trial, appellant testified that she recalled waking up and
seeing the deceased lying in bed next to her with a gun in his hand. The basis for appellant's
motion for new trial is that while incarcerated in jail on September 24, 1997, she awoke from a
nap and, for the first time since the night in question, remembered the events surrounding the
death of the deceased. Appellant remembered for the first time that when she got out of bed, she
saw the deceased coming toward her with gun in hand and heard a clicking noise. Appellant
recalled that at this point she grabbed a skillet and struck the deceased in the head several times,
stating, "I had not remembered any of these events until September 24, 1997."

 "A new trial shall be granted an accused where material evidence favorable to the
accused has been discovered since trial." Tex. Code Crim. P. Ann. art. 40.001 (West Supp.
1999). To show that the trial court abused its discretion in not granting a new trial, the record
must reflect that (1) the newly discovered evidence was unknown to the movant the time of trial;
(2) the movant's failure to discover the evidence was not due to his want of diligence; (3) the
evidence was admissible and not merely cumulative, corroborative, collateral, or impeaching; and
(4) the evidence was probably true and would probably bring about a different result in another
trial. Moore v. State, 882 S.W.2d 844, 849 (Tex. Crim. App. 1994)

 The granting or denying of a motion for new trial lies within the discretion of the
trial court. We do not substitute our judgment for that of the trial court, but rather decide whether
the trial court's decision was arbitrary or unreasonable. See Lewis v. State, 911 S.W.2d 1, 7
(Tex. Crim. App. 1995). Motions for new trial based on newly discovered evidence are not
favored by the courts and are viewed with great caution. See Drew v. State, 743 S.W.2d 207, 225
(Tex. Crim. App. 1987). Clearly, the trial court is able to determine the credibility of the witness
by observation in a way that an appellate court cannot duplicate from a cold record. If the newly
discovered evidence is of questionable weight and credibility, and would probably not bring about
a different result upon a new trial, the trial court does not abuse its discretion in refusing a new
trial. See Jones v. State, 711 S.W.2d 35, 37 (Tex. Crim. App. 1986).

 The death of the deceased was discovered on June 25, 1996. Judgment and
sentence were entered on August 25, 1997. The amended motion for new trial, alleging newly
discovered evidence, was filed on October 1, 1997. Assuming the trial court had jurisdiction of
the untimely filed motion for new trial, we are unable to conclude that the trial court's decision
was arbitrary or unreasonable. We hold that the trial court did not abuse its discretion in
overruling appellant's amended motion for new trial. Appellant's first point of error is overruled.

 In her second point of error, appellant urges that the trial court erred in sustaining
objections to the testimony of Elva Gonzales, a counselor for battered women, relative to the
physical and psychological abuse committed by the deceased, and the testimony of Audra Mills
of the Hays-Caldwell Council on Alcohol and Drug Abuse relative to the victim's alcohol
problem. Appellant relies on article 38.36(a) of the Texas Code of Criminal Procedure and rule
702 of the Texas Rules of Criminal Evidence. Article 38.36(a) provides:


In all prosecutions for murder, the state or the defendant shall be permitted to offer
testimony as to all relevant facts and circumstances surrounding the killing and the
previous relationship existing between the accused and the deceased, together with
all relevant facts and circumstances going to show the condition of the mind of the
accused at the time of the offense.



Tex. Code Crim. P. Ann. art. 38.36(a) (West Supp. 1998).


 Rule 702 provides:



If scientific, technical, or other specialized knowledge will assist the trier of fact
to understand the evidence or to determine a fact in issue, a witness qualified as an
expert by knowledge, skill, experience, training, or education may testify thereto
in the form of an opinion or otherwise.



Tex. R. Crim. Evid. 702.

 Appellant urges that the proffered testimony of Gonzales and Mills would show that
appellant had reported physical abuse and threats to her life by the deceased, along with abusive
behavior of the deceased, especially when he was drinking. The deceased's reputation for violence
and commission of prior specific acts of violence, which are known to the defendant, are probative
of whether the defendant reasonably believed the force the defendant used was immediately
necessary to protect the defendant. See Thompson v. State, 659 S.W.2d 649, 653 (Tex. Crim.
App. 1983). Appellant's state of mind in the instant cause was relevant to the instruction on self
defense given by the trial court.

 While all the facts and the circumstances surrounding the previous relationship
between the accused and the deceased constitute probative evidence on appellant's state of mind,
the exception does not extend to hearsay testimony. See Amis v. State, 910 S.W.2d 511, 520
(Tex. App.--Tyler 1995, pet. ref'd). In Navaro v. State, 863 S.W.2d 191 (Tex. App.--Austin
1993, no pet.), the victim's mother testified that the victim told her the defendant put a gun to her
head and threatened to kill her. This Court held that this testimony was not admissible to show
the state of mind of the deceased. It had no relevance except to prove the truth of the matter
stated. Id. at 197. Without reviewing all of the proffered testimony of Gonzales and Mills in the
instant cause, we believe the trial court did not err in sustaining the State's hearsay objections to
such testimony.

 Assuming the trial court erred in excluding portions of the proffered testimony, we
must determine whether the resulting harm requires reversal. Appellant's testimony that the
deceased was physically and mentally abusive to her, the victim had threatened her life, appellant
had attempted to leave the deceased because of abuse of her and her low self-esteem and
deceased's history as an alcoholic was supported by numerous witnesses that included a family
violence psychologist, appellant's daughter, and appellant's son. While portions of the proffered
testimony of Mills and Gonzales were excluded, other portions were admitted relative to appellant
being afraid of the deceased, law enforcement's referral of appellant to the Women's Center,
appellant's lack of a history of violence and appellant's development of a plan to leave the
deceased. Under the circumstances, the excluded portions of the testimony of Gonzales and Mills
added little to appellant's defense.

 We believe error, if any, falls within the ambit of non-constitutional error. 
Consequently, reversal is not required unless the error affected substantial rights of the appellant. 
See Tex. R. App. P. 44.2(b). We hold that substantial rights of appellant were not affected by the
exclusion of the proffered evidence. Assuming the higher standard is applicable, we hold beyond
a reasonable doubt that the error did not contribute to the conviction or to the punishment. See
id. at 44.2(a). (1) Appellant's second point of error is overruled.

 In her third point of error, appellant contends the trial court erred in denying
appellant's request for an instruction on whether she caused the death of the deceased under the
immediate influence of sudden passion arising from an adequate cause. In the event that a
defendant makes such proof by a preponderance of the evidence at the punishment stage of the
trial, the offense is a felony of the second degree. See Tex. Penal Code Ann. § 19.02(d) (West
1994). "Adequate cause" and "sudden passion" are defined in section 19.02(a) to mean:


(1) "Adequate cause" means cause that would commonly produce a degree of
anger, rage, resentment, or terror in a person of ordinary temper, sufficient
to render the mind incapable of cool reflection.


(2) "Sudden passion" means passion directly caused by and arising out of
provocation by the individual killed or another acting with the person killed
which passion arises at the time of the offense and is not solely the result of
former provocation.



 Appellant directs our attention to the following evidence in support of her
contention that the issue of sudden passion was raised: (1) during the day preceding the night
when she awoke to observe appellant asleep with a pistol in his hand, she attempted to leave the
house on two occasions to report deceased's conduct to the police only to be grabbed by the
deceased and returned to the house; (2) on one of her attempts to leave, the deceased knocked her
down causing a knot on her head; (3) on the day in question, she observed the deceased at a table
with a gun on it; (4) the victim hollered and waived his arms at her; and (5) the night following
these events appellant awoke to see the deceased sleeping with a gun in his hand. At trial,
appellant testified that the next thing she remembered was being in the emergency room where the
attendants were working on her wrists.

 Under cross-examination, appellant stated that the victim was asleep with his face
down and his body between her and the pistol in his hand. Appellant agreed that the authorities 
found the pistol in another room. Appellant stated that when she awoke and "watched him [the
deceased] sleep," she did not "want to hit him and hurt him."

 The passage of an hour between the provoking events and the homicide has been
held to negate the "immediate influence" necessary to show provocative action "at the time of the
offense." See Gaston v. State, 930 S.W.2d 222, 226 (Tex. App.--Austin 1996, no pet.). The
charge is mandatory only when there is evidence that the defendant acted "under the immediate
influence of sudden passion arising from adequate cause." See Hobson v. State, 644 S.W.2d 473,
478 (Tex. Crim. App. 1983). In Hobson, events concerning the defendant's daughter that
occurred the morning prior to the homicide did not constitute "some evidence which raised the
issue that [the defendant] was acting under such immediate influence." Id. at 478.

 Appellant's reliance on Medivil v. State, 812 S.W.2d 629 (Tex. App.--El Paso
1991, no pet.), appears to be based on the defendant's testimony that the events resulting in the
victim's death were preceded by periods of "blanking out." While there is this similarity in
Medivil and the instant cause, the defendant in Medivil described many of the events at the time
of the fatal stabbing: the struggle, sustaining knife wounds inflicted by the victim, holding the
victim in a headlock and accompanying bleeding. The court held that the periods of blanking out
did not dispense with the necessity of charging on the offense of voluntary manslaughter, stating
that the stab wounds to appellant's fingers in the fatal struggle were sufficient in severity to raise
the issue of sudden passion arising from adequate cause. Id. at 631. In the instant cause, the
provocative events were not shown to have occurred "at the time of the offense." The trial court
did not err by refusing appellant's requested instruction. Appellant's third point of error is
overruled.

 The judgment is affirmed.



 

 Tom G. Davis, Justice

Before Justices Kidd, B. A. Smith and Davis*

Affirmed

Filed: February 19, 1999

Do Not Publish




















* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. Prior to the effective date of Rule 44.2 on September 1, 1997, reversal was required for
all errors, unless after examining the record, it was determined beyond a reasonable doubt that the
error made no contribution to the conviction or to the punishment. See former Tex. App.
81(b)(2), replaced by Rule 44.2.




house on two occasions to report deceased's conduct to the police only to be grabbed by the
deceased and returned to the house; (2) on one of her attempts to leave, the deceased knocked her
down causing a knot on her head; (3) on the day in question, she observed the deceased at a table
with a gun on it; (4) the victim hollered and waived his arms at her; and (5) the night following
these events appellant awoke to see the deceased sleeping with a gun in his hand. At trial,
appellant testified that the next thing she remembered was being in the emergency room where the
attendants were working on her wrists.

 Under cross-examination, appellant stated that the victim was asleep with his face
down and his body between her and the pistol in his hand. Appellant agreed that the authorities 
found the pistol in another room. Appellant stated that when she awoke and "watched him [the
deceased] sleep," she did not "want to hit him and hurt him."

 The passage of an hour between the provoking events and the homicide has been
held to negate the "immediate influence" necessary to show provocative action "at the time of the
offense." See Gaston v. State, 930 S.W.2d 222, 226 (Tex. App.--Austin 1996, no pet.). The
charge is mandatory only when there is evidence that the defendant acted "under the immediate
influence of sudden passion arising from adequate cause." See Hobson v. State, 644 S.W.2d 473,
478 (Tex. Crim. App. 1983). In Hobson, events concerning the defendant's daughter that
occurred the morning prior to the homicide did not constitute "some evidence which raised the
issue that [the defendant] was acting under such immediate influence." Id. at 478.

 Appellant's reliance on Medivil v. State, 812 S.W.2d 629 (Tex. App.--El Paso
1991, no pet.), appears to be based on the defendant's testimony that the events resulting in the
victim's death were preceded by periods of "blanking out." While there is this similarity in
Medivil and the instant cause, the defendant in Medivil descr